[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12561
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 28, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20954-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIE MICHELE SCHETTINI,
a.k.a. Michou,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 28, 2006)

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Marie Michele Schettini plead guilty to conspiracy to import five kilograms

or more of cocaine, in violation of 21 U.S.C. § 963, and was held accountable for a quantity of cocaine amounting to 19 kilograms. The Presentence Investigation Report ("PSI") recommended that she receive a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b) (2005). Schettini appeals the sentence imposed by the district court, which denied her minor-role reduction following a government objection. Because the district court did not clearly err, we AFFIRM.

## I. BACKGROUND

Schettini plead guilty to Count One of a four-count indictment charging her with conspiracy to import five kilograms or more of cocaine in violation of 21 U.S.C. § 963. Schettini challenges the district court's determination that she did not deserve the minor-role reduction. We, therefore, restate the facts relevant to Schettini's role in the charged crime.

A confidential government source reported to the Drug Enforcement Agency ("DEA") that Yves Paul Jerome, Schettini's nephew, had given the confidential source a boat for purposes of installing concealed compartments in the interior of the vessel so that the boat could be used to smuggle kilogram quantities of cocaine into South Florida from the Bahamas. Beginning in June 2004, the DEA and other agencies began to monitor the activities of Jerome and his associates.

In the course of planning to get the drugs to the United States, Schettini participated in obtaining a boat to serve as transportation. The plan for transporting the drugs to the United States by boat fell through, and arrangements were made to fly the drugs to the United States from the Bahamas. On the day the drugs arrived, David Schettini, Schettini's husband, called Jerome and left a message on his voice mail. During the message, David Schettini could be heard telling Michele Gregory Jean Paul, Michele Schettini's son, that he was crying like a child. Jean Paul could be heard in the background stating that their problem was that "things" had arrived, that the money was coming soon, but that nothing was planned. Michele Schettini is then heard in the background of the message asking David Schettini what was wrong, then telling Jean Paul, "[d]on't worry, I will plan." R3 at 9. The next day, Schettini was arrested in a car with her co-conspirators. A drug dog was brought to the scene and alerted in three different places around the car.

The government objected to the PSI's recommendation that Schettini receive a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b). The government argued at sentencing that Schettini plead guilty to conspiring to import the entire amount of cocaine and was on the same footing of culpability as her co-conspirators. As the basis for their objection, the government quoted Schettini in wire interceptions

saying, "Don't worry, I will plan," in reference to cocaine arriving from the Bahamas. R1-102 at 3. Schettini countered that her actions were only part of a larger conspiracy that extended beyond the importation of the 19 kilograms of cocaine for which she would be sentenced. The district court rejected this argument as only relevant if Schettini was pleading guilty to crimes associated with this purportedly larger conspiracy, and not just to her role in conspiring to import 19 kilograms of cocaine.

The district court rejected the PSI recommendation that Schettini receive a minor-role reduction. She did, however, meet the criteria for the safety-valve provisions of U.S.S.G. § 5C1.2, thus lowering her offense level by two points. The government also agreed to ask the district court to reduce this offense level by another level, bringing the final offense level to 29. The district court ultimately sentenced Schettini to 87 months, a sentence at the low end of the 87–108 range months prescribed by the Guidelines.

On appeal, Schettini argues that the district court's rejection of a recommended minor-role reduction was improper and that the sentence should be vacated and remanded for resentencing. Schettini's argument rests mainly on her claim that she was a relatively minor figure in comparison with the more involved

4

actions of co-conspirators such as Yves Jerome and her husband, David Schettini.[1]

## II. DISCUSSION

"This Court has long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." United States v. Rodriguez de Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The Sentencing Guidelines permit a court to decrease a defendant's offense level by two points if it finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G § 3B1.2(b). A defendant is a minor participant if she is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. Because we still require sentencing courts to calculate the Guidelines range correctly, we would have to remand for resentencing if Schettini was entitled to the minor-role reduction. See

---

[1] Additionally, Schettini argues that the district court should not have considered uncorroborated government evidence suggesting that Schettini played a more extensive role in facilitating the transportation of the cocaine by air from the Bahamas to the United States, because such information lacks indicia of reliability. At the sentencing hearing, the government introduced uncorroborated evidence that Michelle Schettini flew to the Bahamas for purposes of personally overseeing the transportation of the cocaine into the United States by air. In resolving factual disputes in the context of a sentencing hearing, a court may consider relevant information that is otherwise inadmissible provided that the information has sufficient indicia of reliability to support its probable accuracy. See U.S.S.G. § 6A1.3(a). Even without considering this uncorroborated evidence, the record supports the district court's decision, and therefore any error in the consideration of the evidence by the district court is harmless. See United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005).

United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005).

The proponent of the downward adjustment bears the burden of proving a minor role in the offense by a preponderance of the evidence. Rodriguez de Varon, 175 F.3d at 939. In determining the defendant's role, the decision falls within the sound discretion of the district court: "a trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review." Id. at 945 (citations omitted).

In determining whether a mitigating-role reduction is warranted, a district court should

> [f]irst, and most importantly . . . measure the defendant's role against the relevant conduct for which she was held accountable at sentencing; we recognize that in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct.

Id. "It is entirely possible for conspiracies to exist in which there are no minor participants." United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991) (per curiam).

In this case, Schettini does not demonstrate that her actual conduct in conspiring to import five or more kilograms of cocaine into the United States was minor in relation to the relevant conduct attributed to her of 19 kilograms of cocaine. Rather, Schettini's conduct in the conspiracy indicates that her role

concerning the 19 kilograms was not minor. As early as 6 November 2004, Schettini could be heard placing phone calls to a co-conspirator urging him to call unknown individuals regarding boats that would be used to transport drugs from the Bahamas to the United States. On 23 November 2004, Schettini's co-conspirators received a shipment of 19 kilograms of cocaine from the Bahamas. Schettini was overheard comforting her co-conspirators, who expressed dismay at their lack of organization upon the arrival of the cocaine from the Bahamas, by telling them that she would "plan." The next day, law enforcement agents apprehended Schettini at a residence that housed 16 of the 19 kilograms of cocaine imported from the Bahamas. The vehicle in which Schettini traveled to that location also alerted for narcotics in three separate locations during a canine field test. These facts are in conformity with relevant conduct for which Schettini was convicted.

Applying the analysis in Rodriguez de Varon to this case, it is evident that the district court did not commit clear error in determining that Schettini was not entitled to a minor-role reduction. While Schettini's argument focuses predominately on comparing her conduct with that of her co-conspirators, measuring such comparisons in the context of the conspiracy is analytically unnecessary in the present case. Schettini's own conduct negates her entitlement

to a minor-role reduction, which dispatches with the need to compare her actions with those of her co-conspirators.  <u>Rodriguez de Varon</u>, 175 F.3d at 941, 945.

### III.  CONCLUSION

Schettini pled guilty to conspiracy to import five kilograms or more of cocaine and was denied a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b). The evidence in the record supports the district court's factual determinations and conclusion to not grant the minor-role reduction.  Because the district court did not clearly err, we **AFFIRM**.